**United States District Court**
**Southern District of Texas**
**Houston Division**

| | |
|---|---|
| Mark Sayers, Jennifer Sayers, Canyon Power Solutions, LLC, Power Solutions Group LLC f/k/a Union Critical Power Solutions, LLC, Sayers Real Estate and Development, LLC, and Sayers Construction, LLC, | Case No. 4:19-cv-04547 |
| *Plaintiffs* | **JURY TRIAL DEMANDED** |
| v. | |
| Utility Construction Services, LLC and E.A. "Andy" Soignet, III, | |
| *Defendants* | |

## Plaintiffs' Original Complaint

Plaintiffs Mark Sayers ("M. Sayers"), Jennifer Sayers ("J. Sayers"), Canyon Power Solutions, LLC ("Canyon"), Power Solutions Group, LLC f/k/a Union Critical Power Solutions, LLC ("Power"), Sayers Real Estate and Development, LLC ("Sayers Real Estate"), and Sayers Construction, LLC ("Sayers Construction") (collectively, "Plaintiffs") file this Original Complaint against Defendants Utility Construction Services, LLC ("UCS") and E.A. "Andy" Soignet, III ("Soignet") (collectively, "Defendants"), and states as follows:

### PARTIES

1. Plaintiff M. Sayers is an individual residing in Hays County, Texas.

2. Plaintiff J. Sayers is an individual residing in Hays County, Texas.

3. Plaintiff Canyon is a Texas limited liability company with its principal place of business located in Hays County, Texas.

4. Plaintiff Power is a Texas limited liability company with its principal place of business located in Hays County, Texas.

5. Plaintiff Sayers Real Estate is a Texas limited liability company with its principal place of business located in Hays County, Texas.

6. Plaintiff Sayers Construction is a Texas limited liability company with its principal place of business located in Hays County, Texas.

7. On information and belief, Defendant UCS is a Louisiana limited liability company doing business in the State of Texas. UCS may be served at its principal office located at 310 St. Phillips St., Thibodaux, Louisiana 70301. On information and belief, Defendant Soignet is the sole member of UCS.

8. On information and belief, Defendant Soignet is an individual residing in Lafourche Parish, Louisiana. Soignet may be served at 310 St. Phillips St., Thibodaux, Louisiana 70301, or wherever he may be found.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over the subject matter of this dispute under 28 U.S.C. § 1332 because the parties are diverse. Defendant UCS is a citizen of Louisiana because its sole member, Soignet, resides in Louisiana. Defendant Soignet also is a citizen of Louisiana. No Plaintiff is a citizen of Louisiana for diversity purposes. The amount in controversy includes actual damages, exemplary damages, and attorneys' fees that exceed $75,000. The Court also has jurisdiction over the subject matter of this dispute because this Complaint includes a claim for trade secret misappropriation under the Defend Trade Secrets Act. The Court therefore also has subject matter jurisdiction pursuant to 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

10. The Court has personal jurisdiction over Defendants at least because Defendants' misconduct described herein occurred in Texas, was directed into Texas, and was intended to damage Plaintiffs in Texas.

11. Venue is proper in this District under at least 28 U.S.C. §§ 1391(b)(2) and (b)(3).

# FACTUAL BACKGROUND

**A.      Sayers Construction contracted with BTU for electrical construction services.**

12.      Sayers Construction is an electrical construction company providing services in the field of electrical construction. For years, Sayers Construction has experienced substantial success by providing premium electrical construction services at competitive rates. Sayers Construction has spent extensive time, labor, skill, and money creating its internal confidential business practices and information to achieve its success.

13.      As a result, on or about November 2018, Sayers Construction was awarded a contract with Bryan Texas Utilities ("BTU"), a public utility company, for the construction of a 138-kV electrical transmission line from Snook to Steele Store Substation (the "Project") (the "BTU Contract"). On December 6, 2018, Philadelphia Indemnity Insurance Company ("Philadelphia"), as the surety, issued a payment bond No. PB03016800401 to Sayers Construction for the Project. For the purpose of securing such bonding, Sayers Construction and other indemnitors entered into a General Indemnity Agreement ("GIA") with Philadelphia in or around January 2018.

14.      Defendant UCS also bid on the Project, but it lost out to Sayers Construction. UCS, however, was determined to not only work on the Project, but to take all profits associated with the Project away from Sayers Construction by whatever means necessary—misappropriating Sayers Construction's confidential internal information, poaching Sayers Construction's employees, tortiously interfering with the BTU Contract and Sayers Construction's other contracts connected to the Project, unfairly competing with Sayers Construction by filing a perjurious bond claim against Sayers Construction, and abusing process by filing a frivolous lawsuit against Sayers Construction and using said lawsuit to induce BTU to send a baseless notice of default to Sayers Construction.

**B.      Sayers Construction hired Brown and Blanchard, who introduced it to UCS and leaked Sayers Construction's confidential information to UCS and Soignet.**

15.      On or about April 1, 2019, Sayers Construction hired Rodney Mitchell Brown as Operations Manager on the Project. Defendant Brown introduced Sayers Construction to UCS, but he failed to disclose to Sayers Construction that he had a close and long-standing relationship

with UCS and with its President and sole owner, Soignet.

16. On or about April 18, 2019, due to Brown's surreptitious actions, Sayers Construction subcontracted a portion of the work under the BTU Contract to UCS (the "UCS Contract") without soliciting additional bids, as was customary for Sayers Construction. Indeed, Brown not only failed to gather competing bids, but during negotiation of the UCS Contract, Brown disclosed Sayers Construction's confidential and trade secret internal information to UCS, including but not limited to budgetary, pricing, profit, and strategic business information, for the benefit of UCS and to the detriment of Sayers Construction on the Project. Such misappropriation unjustly enriched UCS and caused Sayers Construction to lose profits.

17. On or about May 6, 2019, Brown introduced Justin Blanchard to Sayers Construction and caused Sayers Construction to hire Blanchard as a Senior Project Manager on the Project. On information and belief, Blanchard also had a long-standing and close relationship with UCS and Soignet. Blanchard failed to disclose that relationship to Sayers Construction. On information and belief, Blanchard also disclosed to UCS and Soignet, unbeknownst to Sayers Construction, internal Sayers Construction information, including but not limited to budgetary, pricing, profit information, and strategic business information and subcontracted work to UCS on the Project at UCS and Soignet's benefit and to the detriment of Sayers Construction.

18. On or about May 24, 2019, the parties amended and expanded the scope of the UCS Contract regarding the Snook to Steele Store Substation, and replaced the previous scope of work in the UCS Contract in its entirety ("UCS Amendment") (the UCS Contract and UCS Amendment are collectively referred to as "UCS Subcontract"). The contract encompassed all work performed to date on the Project, and also provided essentially no profit for Sayers Construction on the UCS portion of the work under the BTU Contract. This is because, on information and belief, during the negotiations of the UCS Amendment and unbeknownst to Sayers Construction, Defendants Brown and Blanchard continued to disclose confidential Sayers Construction information to UCS and Soignet to the benefit of UCS and Soignet and to the detriment of Sayers Construction. Simultaneously, UCS and Soignet coerced Sayers Construction by putting extreme pressure on it

to accept the terms of the UCS Amendment while threatening to otherwise walk from the Project, which would cause Sayers Construction substantial damage.

19. At the time Sayers Construction entered into the UCS Subcontract, Sayers Construction did not know about Brown or Blanchard's unlawful disclosures. Indeed, Sayers Construction did not know about these unlawful disclosures or UCS and Soignet's solicitation of these disclosures until well after the parties entered into the UCS Subcontract. If Sayers Construction had known about Brown, Blanchard, Soignet, and UCS's unlawful activity, it would have never entered into the UCS Subcontract.

**C. UCS poached Sayers Construction's employees and interfered with the BTU Contract and Sayers Construction's other contracts.**

20. On information and belief, on or about July 19, 2019, UCS approached and successfully solicited two of Sayers Construction's employees that were working on the BTU Contract. The solicitation of Sayers Construction's employees on the BTU Contract made it more burdensome and difficult for Sayers Construction to continue to perform under the BTU Contract. As if soliciting Sayers Construction's confidential information from Sayers Construction employees and poaching additional Sayers Construction employees working on the Project was not enough, UCS then contacted BTU directly to interfere further.

21. The UCS Subcontract expressly prohibits UCS from speaking directly to BTU. Section 5.0 provides: "Non-circumvent. all communication with client **of any kind** shall flow through Sayers Construction LLC" (emphasis added). This provision was added to the UCS Subcontract by Sayers and separately negotiated during contract discussions. On July 24, 2019, however, UCS, under the guise of an alleged notice of lien (which is unenforceable and invalid because BTU is a public power utility company), directly threatened BTU with a fraudulent lien, falsely alleging that Sayers Construction was refusing to pay UCS pursuant to the UCS Subcontract and requesting BTU to "withhold payments from the contractor for payment of the claim." BTU subsequently withheld funds from Sayers Construction on the Project.

22. Additionally, UCS improperly claimed to BTU and Philadelphia that Sayers

Construction had failed to pay UCS for, *inter alia*, Invoice No. 19-078, dated July 2, 2019, and purported to warrant a demand for payment in the amount of $933,075. Yet that invoice on its face states "Net 30"[1]—meaning that payment would not be due and owing until at least 30 days after the invoice date. Because UCS notified BTU and Philadelphia on July 24, 2019, its claim was baseless. Instead, UCS willfully and intentionally sent the notices to Sayers Construction and Philadelphia to falsely accuse Sayers Construction of rejecting or failing to timely pay the invoices (despite the pay-when-paid provision in the UCS Subcontract discussed below), and to interfere with Sayers Construction's contractual relationships with BTU and Philadelphia. This caused more difficulty for Sayers Construction to comply with and perform the obligations under the GIA between Sayers Construction and Philadelphia, and the BTU Contract between Sayers Construction and BTU.

**D.      Lying under oath, UCS filed a fraudulent lawsuit and bond claim in retaliation against Sayers Construction.**

23.      The UCS Subcontract is a pay-when-paid contract, meaning the parties explicitly agreed that Sayers Construction was not obligated to pay UCS until it was first paid by BTU. Accordingly, until BTU paid Sayers Construction, Sayers Construction had no obligation to pay UCS.

24.      On August 8, 2019, Sayers Construction sent a pre-suit demand letter to UCS terminating the UCS Subcontract for UCS's material breaches and reserving all rights. Less than a week later, on August 14, 2019, in direct response to and in retaliation against Sayers Construction's pre-suit demand letter and termination of the UCS Subcontract, UCS filed a frivolous lawsuit based on and in response to Sayers Construction's August 8, 2019 letter. In its frivolous lawsuit, UCS alleged against Sayers Construction: (1) suit on sworn account; (2) breach of contract; (3) quantum meruit; (4) violations of the Texas Prompt Payment Act; (5) trust fund claim; and (6)

---

[1]      For clarity, Sayers Construction disputes that the Net 30 terms of the invoices apply because the parties agreed to a pay-when-paid provision; however, Sayers Construction references the invoices and change orders, and the terms on which Soignet relies, to show the complete frivolity and deceptiveness of UCS's reliance on these documents.

a foreclosure of bond claim against Sayers Construction's surety, Philadelphia, and attorneys' fees against all Defendants. Importantly, UCS's claims against Sayers Construction's surety, Philadelphia, rest squarely on a bond claim that was **dated the same day as the lawsuit**.

25.      Even more disturbingly, UCS attached documents to its petition purporting to prove-up its frivolous claims. However, notably absent from UCS's supporting documents was the UCS Subcontract and the pay-when-paid provision. Instead, UCS filed a **sworn affidavit** by Soignet, UCS's President and sole owner, which only references invoices and change orders it claims govern the dispute, with no mention of the UCS Subcontract and the pay-when-paid provision. Importantly, even setting aside the Parties' UCS Subcontract, a cursory glance at Soignet's affidavit shows just how grossly frivolous and fraudulent UCS's claims are:

- Invoice 19-085, totaling $247,202.88 and dated 8/13/2019 (1 day before UCS filed its bond claim and filed this lawsuit) by its own terms is Net 30.

- Invoice 19-086, totaling $422,672.56 and dated 8/13/2019 (1 day before UCS filed its bond claim and filed this lawsuit) by its own terms is Net 30.

- Change Order Request No. 008.2 totaling $33,000.00 dated 8/13/2019 (1 day before UCS filed its bond claim and filed this lawsuit) did not provide Sayers Construction the opportunity to review and accept or reject, per the Subcontract before filing suit the next day.

- Invoice No. 19-079 totaling $1,138,750.97 dated 8/2/2019 by its own terms is Net 30 (12 days before UCS filed its bond claim and filed this lawsuit).

Invoice 19-085, 19-086, Change Order Request No. 008.2 and Invoice No. 19-079 collectively total $2,021,626.41, meaning that Soignet has lied under oath as to over seventy percent (70%) of UCS's alleged damages based on the face of UCS's own supporting documents.

26.      If that was not enough, while UCS was filing false statements under oath, it was at the same time telling its insurance provider, Altus Receivables Management, that it was only owed an alleged $1,066,387.50. The truth is that even though payment to UCS was not yet due and owing and UCS did not substantially perform the UCS Subcontract, UCS spent the entire time it should have been performing under the UCS Subcontract scheming, lying, and interfering with Sayers Construction's business, and has caused Sayers Construction significant damages as a result.

**E.** **UCS communicated with BTU regarding the frivolous lawsuit filed against Sayers Construction for its sole objective to frustrate Sayers Construction's efforts on the Project.**

27. But that is not all UCS did. After UCS filed its frivolous lawsuit against Sayers Construction and Philadelphia, UCS used the lawsuit to its advantage by informing BTU of the lawsuit and its demand for damages in excess of $2.8 million.

28. UCS used this information to induce BTU to punish Sayers Construction. In response to UCS's deceptive communication, BTU decided to withheld any further payments from Sayers Construction unless Philadelphia consented. UCS deceptively used its filing of the frivolous lawsuit as a means to strangle Sayers Construction's source of funds on the Project and frustrate Sayers Construction's relationships with BTU and Philadelphia. Importantly, on information and belief, UCS communicated this information to BTU with the objective of inducing BTU to injure Sayers Construction. And BTU did in fact subsequently injure Sayers Construction in response to UCS's improper communication by, for example, withholding payment from Sayers Construction and sending a notice of default to Sayers Construction and Philadelphia.

## CAUSES OF ACTION

**Count 1:** **Violation of the Defend Trade Secrets Act (Brought by Sayers Construction):**

29. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

30. Sayers Construction owns trade secrets. The confidential internal information that Brown and Blanchard wrongfully disclosed to UCS constitute trade secrets within the meaning of 18 U.S.C. § 1839.

31. Brown and Blanchard disclosed Sayers Construction's trade secret information to UCS for UCS's use and benefit. Among other things, Sayers Construction relies on this information to establish budget outlays for individual construction projects and to evaluate bids from potential subcontractors for said projects. Sayers Construction's trade secret information provides Sayers Construction a competitive advantage over those that do not have possession of said

information.

32.     Sayers Construction takes and has taken reasonable measures to keep this confidential and trade secret information secret. Sayers Construction kept the trade secret information on individual computer hard drives that were password protected and were not connected via shared server, shared file folders, or any form of cloud storage. Sayers Construction does not disseminate the confidential information throughout the company—instead, the information is only provided to a very limited number of individuals. Sayers Construction does not make these trade secrets publicly available, nor does it make the information readily ascertainable by proper means.

33.     Sayers Construction's trade secrets were related to services used in, or intended for use in, interstate commerce.

34.     Sayers Construction's trade secret information derives independent economic value, actual or potential, from not being generally known or ascertainable through proper means. Sayers Construction's trade secrets have actual and potential value to third parties, including UCS, because UCS is a competitor of Sayers Construction and could use the trade secrets to gain a competitive advantage on the projects for which it is a subcontractor, as well as for other potential projects for which Sayers Construction and UCS would normally compete. UCS's use of Sayers Construction's trade secrets would provide it immediate economic value from the use of such trade secret information.

35.     Defendants willfully misappropriated Sayers Construction's trade secrets. Defendants acquired and used the trade secrets from Brown and Blanchard knowing or having reason to know that Brown and Blanchard breached their respective fiduciary duties to Sayers Construction by improperly disclosing the trade secrets to UCS. Defendants accepted and utilized this information to gain a competitive advantage to the detriment of Sayers Construction. On information and belief, Defendants directed Brown and Blanchard to disclose Sayers Construction's trade secret information. Further, Sayers Construction has not authorized the disclosure of its confidential trade secret information to Defendants, nor has Sayers Construction authorized Defendants' use or acquisition of the confidential trade secret information.

36. Sayers Construction seeks damages from Defendants' actual misappropriation of Sayers Construction's trade secrets in the form of actual loss caused by Defendants' misappropriation, unjust enrichment to Defendants, and/or a reasonable royalty.

**Count 2:     Violation of the Texas Uniform Trade Secrets Act (Brought by Sayers Construction):**

37. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

38. The confidential internal information wrongfully disclosed by Brown and Blanchard to UCS constitute trade secrets within the meaning of TEX. CIV. PRAC. & REM. CODE § 134A.

39. As set forth above, Brown and Blanchard disclosed Sayers Construction's trade secret information, which, among other things, Sayers Construction relies on to establish budget outlays for individual construction projects and to evaluate bids from potential subcontractors for said projects. This trade secret information provides Sayers Construction a competitive advantage over those that do not have possession of said information.

40. Sayers Construction takes and has taken reasonable measures to keep this confidential and trade secret information secret. Sayers Construction kept the trade secret information on individual computer hard drives that were password protected and were not connected via shared server, shared file folders, or any form of cloud storage. Sayers Construction does not disseminate the confidential information throughout the company—instead, the information is only provided to a very limited number of individuals. Sayers Construction does not make these trade secrets publicly available, nor does it make the information readily ascertainable by proper means.

41. Sayers Construction's trade secrets were related to services used in, or intended for use in, interstate commerce.

42. Sayers Construction's trade secrets have actual and potential value to third parties, including UCS, because UCS is a competitor of Sayers Construction and could use the trade secrets to gain a competitive advantage on the projects for which it is a subcontractor, as well as for other potential projects for which Sayers Construction and UCS would normally compete. UCS's

use of Sayers Construction's trade secrets would provide it immediate economic value from the use of such trade secret information.

43. Defendants willfully misappropriated Sayers Construction's trade secrets. Defendants acquired and used the trade secrets from Brown and Blanchard knowing or having reason to know that Brown and Blanchard breached their respective fiduciary duties to Sayers Construction by improperly disclosing the trade secrets to UCS. Defendants accepted and utilized this information to gain competitive advantage to the detriment of Sayers Construction. Further, Sayers Construction has not authorized the disclosure of its confidential trade secret information to Defendants, nor has it authorized Defendants' use of the confidential trade secret information.

44. Sayers Construction seeks damages from Defendants' actual misappropriation of Sayers Construction's trade secrets in the form of actual loss caused by Defendants' misappropriation, unjust enrichment to Defendants, and/or a reasonable royalty.

**Count 3:     Common Law Misappropriation of Trade Secrets (Brought by Sayers Construction):**

45. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

46. As set forth above, Brown and Blanchard disclosed Sayers Construction's trade secret information, which, among other things, Sayers Construction relies on to establish budget outlays for individual construction projects and to evaluate bids from potential subcontractors for said projects. This trade secret information provides Sayers Construction a competitive advantage over those that do not have possession of said information.

47. Sayers Construction takes and has taken reasonable measures to keep this confidential information secret. Among other things, Sayers Construction kept the trade secret information on individual computer hard drives that were password protected and were not connected via shared server, shared file folders, or any form of cloud storage. Sayers Construction does not disseminate the confidential information throughout the company—instead, the information is only provided to a very limited number of individuals. Sayers Construction does not make these trade

secrets publicly available, nor does it make the information readily ascertainable by proper means.

48.    Sayers Construction's trade secrets were related to services used in, or intended for use in, interstate commerce.

49.    Sayers Construction's trade secrets have actual and potential value to third parties, including UCS, because, among other things, UCS is a competitor of Sayers Construction and could use the trade secrets to gain a competitive advantage on the projects for which it is a subcontractor, as well as for other potential projects for which Sayers Construction and UCS would normally compete. UCS's use of Sayers Construction's trade secrets would provide it immediate economic value from the use of such trade secret information.

50.    Defendants willfully misappropriated Sayers Construction's trade secrets. Defendants acquired the trade secrets from Brown and Blanchard knowing or having reason to know that Brown and Blanchard breached their respective fiduciary duties to Sayers Construction by improperly disclosing the trade secrets to UCS. Defendants accepted and utilized this information to gain competitive advantage to the detriment of Sayers Construction. Further, Sayers Construction has not authorized the disclosure of its confidential trade secret information to Defendants, nor has it authorized Defendants' use of the confidential trade secret information.

51.    Sayers Construction seeks damages from Defendants' actual misappropriation of Sayers Construction's trade secrets in the form of actual loss caused by Defendants' misappropriation, unjust enrichment to Defendants, and/or a reasonable royalty.

**Count 4:      Tortious Interference with Existing BTU Contract (Brought by Sayers Construction):**

52.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

53.    Sayers Construction has a valid existing contract with BTU, the BTU Contract.

54.    UCS and Soignet had knowledge of the BTU Contract.

55.    UCS and Soignet willfully and intentionally interfered with the BTU Contract. UCS and Soignet acted willfully and intentionally to serve their own interests at Sayers

Construction's expense. UCS and Soignet's interferences were without justification.

56.     As a proximate cause of UCS and Soignet's intentional interference with the BTU Contract, Sayers Construction has suffered injuries exceeding the Court's minimum jurisdictional limit, including actual damages or loss. Sayers Construction also seeks exemplary damages, interest, court costs, and all other damages to which it is entitled.

**Count 5:     Tortious Interference with Existing GIA with Philadelphia (Brought by all Plaintiffs):**

57.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

58.     Plaintiffs have a valid existing agreement with Philadelphia, the GIA.

59.     UCS and Soignet had knowledge of the GIA.

60.     UCS and Soignet willfully and intentionally interfered with the GIA. UCS and Soignet acted willfully and intentionally to serve their own interests at Plaintiffs' expense. UCS and Soignet's interferences were without justification.

61.     As a proximate cause of UCS and Soignet's intentional interference with the GIA, Plaintiffs have suffered injuries exceeding the Court's minimum jurisdictional limit, including actual damages or loss. Plaintiffs also seek exemplary damages, interest, court costs, and all other damages it is entitled to.

**Count 6:     Unfair Competition By Misappropriation (Brought by Sayers Construction):**

62.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

63.     Sayers Construction created its internal confidential internal business information through extensive time, labor, skill and money.

64.     UCS and Soignet used Sayers Construction's internal confidential budgetary information in competition with Sayers Construction, thereby gaining a special advantage of the competition.

65.     UCS and Soignet's actions were not fair and contrary to accepted business ethics.

66.     UCS and Soignet's actions caused damages to Sayers Construction.

**Count 7:     Abuse of Process (Brought by Sayers Construction against UCS):**

67.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

68.     Sayers Construction was served valid process of UCS's frivolous lawsuit in the 272nd District Court in Brazos County, Texas.

69.     After filing its frivolous lawsuit, UCS made an improper and perverted use of the process by communicating with BTU and informing them of the frivolous lawsuit against Sayers Construction. UCS communicated with BTU for the wrongful purpose of inducing BTU to injure Sayers Construction.

70.     UCS's communication with BTU improperly exceeded the scope of the lawfully intended purpose of the lawsuit.

71.     UCS's communications with BTU caused damages to Sayers Construction.

**Count 8:     Aiding and Abetting a Breach of Fiduciary Duty (Brought by Sayers Construction):**

72.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

73.     UCS and Soignet knew of the fiduciary duties owed by Brown and Blanchard to Elite.

74.     UCS and Soignet participated in Brown's and Blanchard's breaches of their fiduciary duties to UCS and had knowledge such participation furthered Brown's and Blanchard's breach of fiduciary duties to UCS.

75.     Sayers seeks damages in the form of actual loss caused by Defendants' aiding and abetting a breach of fiduciary duty, and UCS and Soignet's unjust enrichment, and disgorgement of any profits they obtained.

**Count 9:      Unjust Enrichment (Brought by Sayers Construction):**

76.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

77.     UCS and Soignet have obtained a benefit from Sayers due to fraud, duress, and/or taking of undue advantage.

78.     The benefit would be unconscionable to retain.

79.     As a proximate cause of UCS and Soignet's unjust enrichment to the detriment of Sayers.

**Count 10:     Conspiracy (Brought by Sayers Construction):**

80.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

81.     Defendants knowingly combined to accomplish an unlawful purpose using unlawful means to misappropriate Sayers Construction's confidential, proprietary, and trade secret information, to unlawfully solicit Sayer Construction's employees, and to intentionally interfere with Sayers Construction's existing and/or ongoing business relationships and prospective business relationships. UCS and Soignet committed unlawful, overt acts in furtherance of their misappropriation, intentional interference, and aiding and abetting.

82.     83. As a result of the actions of UCS and Soignet, Sayers Construction has suffered injuries, including actual damages.

## ATTORNEYS' FEES

83.     Plaintiffs have retained the law firm of Griffith Barbee PLLC to represent them in this action and have agreed to pay the firm reasonable and necessary attorneys' fees. Plaintiffs are entitled to recover their attorneys' fees from Defendants.

## EXEMPLARY DAMAGES

84.     Plaintiffs are entitled to exemplary damages because harm to them resulted from UCS and Soignet's fraud or malice.

## DEMAND FOR JURY TRIAL

85.     Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs pray that the Court enter judgment awarding Plaintiffs the following:

A.     Their actual, pecuniary, and special damages;

B.     Exemplary and/or punitive damages;

C.     Their attorneys' fees and costs;

D.     Pre-judgment and post-judgment interest; and

E.     All other relief Plaintiffs are entitled to.

November 19, 2019                             Respectfully submitted,

**Griffith Barbee PLLC**

/s/ *Casey Griffith*

Casey Griffith
Attorney-in-Charge
Texas Bar No. 24036687
Southern District of Texas ID: 30958
Casey.Griffith@griffithbarbee.com

Michael Barbee
Texas Bar No. 24082656
Southern District of Texas ID: 2294159
Michael.Barbee@griffithbarbee.com

One Arts Plaza
1722 Routh St., Ste. 710
Dallas, Texas 75201
(214) 446-6020 | main
(214) 446-6021 | fax

**Counsel for Plaintiffs**